# United States Court of Appeals
### For the Eighth Circuit
_____

No. 25-2291
_____

United States of America

*Plaintiff - Appellee*

v.

Jesus Salamo-Roche

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Southern
_____

Submitted: May 14, 2026
Filed: July 30, 2026
[Unpublished]
_____

Before L.R. SMITH, BENTON, and STRAS, Circuit Judges.
_____

PER CURIAM.

Jesus Salamo-Roche pleaded guilty to conspiring to distribute 500 grams or more of methamphetamine across several states. At sentencing the district court[1] applied a two-level offense enhancement for possessing a dangerous weapon. *See*

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

U.S.S.G. § 2D1.1(b)(1). Salamo-Roche challenges the district court's application of the enhancement. We affirm.

In July 2023, federal authorities executed a search warrant on Salamo-Roche's residence in Sioux Falls, South Dakota. Relevant to this appeal, they recovered a firearm from a vehicle belonging to Salamo-Roche found at his home. The presentence investigation report (PSR) recommended the application of the dangerous weapon enhancement under § 2D1.1(b)(1). Salamo-Roche objected to the PSR's recommendation.

At his sentencing hearing, testimony established that it had been months since a coconspirator had driven Salamo-Roche's vehicle, that Salamo-Roche had been identified by coconspirators as someone who stored firearms at his home for other members of the conspiracy, and that his primary role in the conspiracy was using his home as a meeting location for members of the conspiracy. Salamo-Roche denied owning the weapon and told investigators that a coconspirator regularly drove his vehicles. The district court overruled his objection and applied the enhancement for possession of a dangerous weapon.

On appeal, Salamo-Roche argues that the government failed to prove by a preponderance of the evidence that he possessed the firearm, since it was possible that it belonged to a coconspirator.

"We review de novo the district court's application of the [G]uidelines and review for clear error its underlying findings of fact." *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006) (citation modified).

"Application Note 3 to the [G]uidelines explains that: '[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'" *United States v. McCracken*, 110 F.3d 535, 541 (8th Cir. 1997) (second alteration in original) (quoting U.S.S.G. § 2D1.1(b)(1) cmt. n. 11(A)). "The enhancement poses a very low bar for the

government to hurdle." *United States v. Voelz*, 66 F.4th 1155, 1158 (8th Cir. 2023) (quoting *United States v. Garcia*, 772 F.3d 1124, 1125 (8th Cir. 2023)). "Lack of proof of use or actual possession does not prohibit a § 2D1.1(b)(1) adjustment; enhancement for weapons possession may be based on constructive possession, which includes ownership, dominion, or control over the item, *or dominion over the premises*." *McCracken*, 110 F.3d at 541 (emphasis added).

Here, the government successfully established that the firearm was present in Salamo-Roche's car and that the car was at his home. On this record, it is not clearly improbable that the firearm found in Salamo-Roche's vehicle was connected to the drug charge against him. Our precedent has repeatedly recognized that "[f]irearms are known tools of the trade of narcotics dealing because of the dangers inherent in that line of work." *United States v. Simon*, 767 F.2d 524, 527 (8th Cir. 1985) (citation modified). And we have recognized that applying the enhancement in this context requires the government to demonstrate simply that "the weapon was found in the same location where drugs or drug paraphernalia were located or where part of the conspiracy took place." *United States v. Garcia*, 703 F.3d 471, 447 (8th Cir. 2013) (citation modified); *see United States v. Savage*, 414 F.3d 964, 966 (8th Cir. 2005) (holding that the weapon may be "present during relevant conduct, as defined by U.S.S.G. § 1B1.3(a)(2), not merely during the offense of conviction" (citation modified)). The government did so here.

Salamo-Roche used his home to further the criminal methamphetamine distribution conspiracy; he was known to store weapons at his home. The record here supports a finding by a preponderance of the evidence that Salamo-Roche possessed the firearm in connection with the relevant conduct of the drug conspiracy. Indeed, witness testimony indicated that Salamo-Roche possessed multiple firearms at his home where he stored them for other members of the conspiracy. Another member of the drug conspiracy indicated that he observed Salamo-Roche both possessing a firearm and weighing drugs at his home. *See United States v. Curry*, 911 F.2d 72, 79 (8th Cir. 1990) (explaining that "drug traffickers typically keep firearms available to protect themselves and their drugs and drug money"). Salamo-Roche argues that the

firearm was found in his car and not his home. This distinction is immaterial given his car was at his home and, at least at one point, he had a firearm in his home. *Cf. Brown v. United States*, 169 F.3d 531, 533–34 (8th Cir. 1999) (finding a nexus between firearms and drug-trafficking activity where the drug-trafficking activities occurred in different rooms than where the firearms were stored); *United States v. Morris*, 576 F.3d 661, 669–70 (7th Cir. 2009) (finding that defendant constructively possessed drugs found in his car where he had been seen driving the car and the car was parked at his home).

We affirm.

_____